OPINION
{¶ 1} Defendant-appellant John Hudson Dooley appeals from his conviction and sentence in Case No. 2005-CR-4164 for one count of aggravated murder, in violation of R.C. § 2903.01(B), and one count of aggravated robbery, in violation of R.C. § 2911.01(A)(1). Both counts contained repeat violent offender specifications. *Page 2 
 {¶ 2} On October 17, 2005, Dooley was charged by indictment with one count of aggravated murder and one count of aggravated robbery, each count accompanied by a repeat violent offender specification. At his arraignment on October 20, 2005, Dooley pled not guilty.
 {¶ 3} On November 1, 2005, Dooley filed a motion to suppress. A hearing was held on said motion on December 9, 2005.[1] In a written decision filed on January 6, 2006, the trial court overruled Dooley's motion in its entirety. Following a jury trial which began on January 29, 2007, and concluded on January 31, 2007, Dooley was found guilty on all counts.[2] On March 8, 2007, the trial court sentenced Dooley to life in prison for the aggravated murder charge and to ten years imprisonment for the aggravated robbery charge with no eligibility for judicial release. The court further ordered that the sentences were to be served consecutively to each other.[3] Dooley filed a timely notice of appeal with this Court on March 23, 2007.
 I {¶ 4} On the morning of Sunday, June 12, 2005, the body of Dooley's mother, Helen Todd, was discovered in the living room of her apartment by her daughter, Kathy Hill. Todd had been seemingly shot in the back of the head, and an extension cord was wrapped around her *Page 4 
neck. Once the police had been summoned to the scene, they obtained a search warrant for the decedent's first floor apartment, as well as the second floor apartment which was inhabited by Dooley, his girlfriend, and their children. A search of the second bedroom in Todd's apartment revealed a pile of men's clothes including a pair of jeans, a muscle shirt, underwear, and socks. Kathy Hill testified that the clothes probably belonged to her brother, Dooley, who was known to stay in the second bedroom intermittently. The police also found a small caliber handgun in the corner of the living room. The police assumed that the handgun was used to murder Todd.
 {¶ 5} During the initial search, Kathy Hill noticed that Todd's car, a 1984 Oldsmobile Cutlass, was missing. Approximately two hours after Todd's body was discovered, police located Dooley driving her car near Keowee and Monument Streets in Dayton. At the time Dooley was taken into custody, he was accompanied by a prostitute named Terri Lynn Shaw, whom he had picked up earlier that morning. Shaw testified that when Dooley picked her up at the Economy Inn, he paid her $100.00 to engage in sexual conduct with him. She also observed that Dooley was in possession of approximately $600.00 worth of crack cocaine and powder cocaine. Dooley was apprehended by Dayton Police when he and Shaw left the motel to purchase liquor. On the way to the liquor store, Dooley told Shaw that he wanted to stop by his mother's apartment in order to check on her. Shaw testified that Dooley changed his mind and attempted to flee the area when he observed police cars surrounding Todd's apartment. Police stopped Dooley and arrested him as he attempted to return to the motel.
 {¶ 6} Testimony was adduced at trial which revealed that the day before Todd's murder, Dooley sold a diamond ring which belonged to his mother for $150.00. Jay Allen Manns testified that he bought the ring from Dooley who told him that the ring was being sold *Page 4 
to pay his mother's rent. Kathy Hill later testified that contrary to what Dooley told Manns, Todd had actually paid Dooley's rent for his apartment the night before she was murdered in order to keep her son and his girlfriend from being evicted. Additionally, in the months and weeks prior to Todd's murder, evidence was admitted at trial which established that Dooley made a habit of asking his mother for money when he was unemployed. Kathy Hill testified that one month prior to the murder, she witnessed Dooley pin Todd against a door while demanding money, and threatening to "mash her face" if she refused. On another occasion soon thereafter, Kathy Hill was on the phone with her mother when she heard Dooley in the background demanding money from Todd and threatening violence if she refused.
 {¶ 7} When an autopsy later revealed that Todd had died not of a gunshot wound, but of repeated blunt force trauma to her head, detectives from the Dayton Police decided to return to Todd's apartment on Monday, June 13, 2005. Specifically, Detective Doyle Burke remembered that he had seen a baseball bat in an umbrella vase next to the front door during the initial search of Todd's apartment and wanted to check and see if the bat had been used in the murder. Upon returning to the apartment, Detective Burke encountered Kathy Hill and the owner/landlord of the apartment building who both provided their consent for Detective Burke to reenter the premises and conduct another search. During the second search of the apartment, Detective Burke located the baseball bat next to the door in the living room and found that it had a large amount of blood on it. The blood was later found to be Todd's. Todd's blood was also found on the instep of the left shoe Dooley was wearing when he was arrested, as well as the clothes taken from the second room in Todd's apartment where Dooley sometimes stayed.
 {¶ 8} After a jury trial, Dooley was convicted of all the charges contained in the *Page 5 
indictment and sentenced accordingly. It is from this judgment that Dooley now appeals.
 II {¶ 9} Dooley's first assignment of error is as follows:
 {¶ 10} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED DURING A WARRANTLESS SEARCH OF APPELLANT'S RESIDENCE"
 {¶ 11} In his first assignment, Dooley contends that the trial court erred when it overruled his motion to suppress, finding that Dooley had no expectation of privacy in the living room in Todd's apartment. Without any expectation of privacy, the trial court held that Dooley did not have standing to assert a violation of his Fourth Amendment rights and challenge the ensuing warrantless search. Thus, he could not object to the seizure, and later admission, of the baseball bat found in the living room of Todd's apartment which was used to bludgeon her to death. Dooley argues that because he presented evidence that he sometimes stayed in Todd's apartment when he was arguing with his girlfriend, he enjoyed a legitimate expectation of privacy in the premises such that the police were required to obtain his consent before searching the apartment a second time.
 {¶ 12} With respect to a motion to suppress, "the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v.Hopfer (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, quoting Statev. Venham (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. State v.Isaac (July 15, 2005), Montgomery App. No. 20662, 2005-Ohio-3733, citing *Page 6 State v. Retherford (1994), 93 Ohio App.3d 586, 639 N.E.2d 498. Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.
 {¶ 13} As we recently held in State v. Petersen, 166 Ohio App.3d 112,116, 849 N.E.2d 104, 107, 2006-Ohio-1857:
 {¶ 14} "Standing to invoke the protection of the Fourth Amendment depends on whether the person who claims it has a legitimate expectation of privacy in the place invaded by a police search and seizure. * * *. A subjective expectation of privacy is legitimate if it is an expectation that society is prepared to recognize as reasonable. * * *. A person who challenges a search bears the burden of proving the expectation in order to show that he has standing to challenge the legality of that search.* * *." (Citations omitted).
 {¶ 15} A premises need not be one's home in order for one to have a legitimate expectation of privacy in that place. Minnesota v. Olson
(1990), 495 U.S. 91, 110 S.Ct. 1684. In Olson, the Supreme Court held that an overnight guest may have a legitimate expectation of privacy in another's home even when his occupation of the premises is not exclusive. While the expectation generally attaches to one's home or residence, the fact that it does is not a bar to a reasonable expectation of privacy in other places that a person utilizes for residential purposes.
 {¶ 16} In Petersen, we reversed a the trial court's denial of a defendant's motion to suppress after we found that the evidence was sufficient to establish defendant's status as an overnight guest at a residential premises searched without a warrant. Thus, the defendant had a legitimate expectation of privacy in the premises. Specifically, the defendant's uncontradicted testimony that he stayed overnight at the residence of his girlfriend and their child for three *Page 7 
consecutive nights immediately preceding the warrantless entry and search of that residence by police was sufficient to establish defendant's status as an overnight guest with standing to challenge the legality of the search. At the hearing on the motion to suppress, we found that the defendant's testimony was unequivocal regarding his recent continued presence at his girlfriend's residence, and the trial court never indicated that it found his testimony other than credible.
 {¶ 17} In the instant case, the evidence established that Dooley resided in the apartment directly above Todd's apartment. Todd was the sole leaseholder on her apartment, and Dooley did not have a key to her residence. Todd was also the only person to pay the rent at her apartment. We note that the baseball bat believed to have been used in the murder of Todd did not belong to Dooley and was found in an umbrella stand placed in the living room of her apartment. Although some evidence was presented which established that Dooley occasionally spent the night at his mother's apartment in her second bedroom if he and his girlfriend were fighting, no evidence was presented which established that he stayed at Todd's apartment in the nights preceding her death. In fact, no evidence was presented which established when Dooley was last legitimately at Todd's apartment as an overnight guest.
 {¶ 18} Additionally, Detective Burke and Sergeant White obtained the permission of Kathy Hill and her sister who were at Todd's apartment on the afternoon in question before entering the residence to search for the baseball bat. Detective Burke also obtained the consent of Todd's landlord that day before searching the premises. It was not unreasonable for Detective Burke to believe that these individuals possessed the authority to consent to a further search of Todd's apartment. *Page 8 
 {¶ 19} In light of these facts, the trial court correctly found that Dooley failed to meet his evidentiary burden and establish that he possessed a legitimate expectation of privacy in Todd's apartment. Thus, we conclude, as did the trial court, that Dooley was without standing to complain about Detective Burke's re-entry into Todd's apartment to search for the murder weapon.
 {¶ 20} Dooley's first assignment of error is overruled.
 III {¶ 21} Dooley's second assignment of error is as follows:
 {¶ 22} "TRIAL COUNSEL'S FAILURE TO OBJECT TO TESTIMONY OF APPELLANT'S OTHER BAD ACTS DENIED APPELLANT HIS DUE PROCESS RIGHT TO EFFECTIVE COUNSEL AND A FAIR TRIAL"
 {¶ 23} During trial, Kathy Hill testified to two occasions in which she either personally observed or heard Dooley threaten Todd with physical harm. The first event Hill testified to occurred approximately one month before the murder when Hill saw Dooley pin Todd against a wall in her apartment and threatened to "mash her face" when she refused to give him money. The second event occurred approximately two weeks later when Hill was on the phone with Todd and heard Dooley in the apartment threatening her and demanding money. On appeal, Dooley argues that these two instances constitute prior bad acts under Evid. R. 404(B), and evidence of the acts should not have been admitted to prove that he acted in conformity with this behavior when he allegedly murdered and robbed Todd. Dooley contends that his counsel's failure to object to the introduction of his prior threatening behavior towards his mother denied him his constitutionally protected right to effective counsel and a fair trial. *Page 9 
 {¶ 24} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, citingState v. Lytle (1976), 48 Ohio St.2d 391, 396-397, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135.
 {¶ 25} The above standard contains essentially the same requirements as the standard set forth by the United States Supreme Court inStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, supra, at 687-688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."Id. Thus, counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Id.
 {¶ 26} For a defendant to demonstrate that he has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, absent counsel's errors, the result of the trial would have been different. Bradley, supra, at 143. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Page 10 Strickland, supra, at 694.
 {¶ 27} After a thorough review of the record, we hold that Hill's testimony regarding the two instances of Dooley's threatening behavior towards Todd in the weeks preceding her murder was properly admitted pursuant to Evid. R. 404(B) which states in pertinent part:
 {¶ 28} "(B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Emphasis added).
 {¶ 29} Hill' s testimony that Dooley had threatened Todd for refusing to give him money on two occasions in the weeks preceding her death is clearly admissible under Evid. R. 404(B) in order to establish a motive for murdering Todd. Interestingly, it can also be argued that Dooley's threat to "mash [Todd's] face" demonstrates evidence of a plan in regards to the murder of Todd insofar as she died as a result of multiple blunt force trauma to the head. Thus, evidence of Dooley's threats was probative of his motive or plan with respect to the murder of Todd, and defense counsel's failure to object to the introduction of said testimony does not constitute ineffective assistance of counsel.
 {¶ 30} Dooley's second assignment of error is overruled.
 IV {¶ 31} Dooley's third assignment of error is as follows:
 {¶ 32} "THE TRIAL COURT ERRED IN EXCLUDING A WRITING THAT PROVIDED EXCULPATORY EVIDENCE OF APPELLANT'S RIGHT TO USE HIS *Page 11 
MOTHER'S VEHICLE."
 {¶ 33} In his third assignment, Dooley contends that the trial court erred when it excluded a document from evidence purportedly drafted by Todd which granted Dooley a testamentary ownership interest in her 1984 Oldsmobile Cutlass. It has already been mentioned that when Dooley was apprehended by Dayton police, he was driving his mother's motor vehicle. Dooley argues that the writing indicated Todd's willingness to allow her son use of her vehicle. More importantly, however, Dooley asserts that admission of the document into evidence would have supported the inference that simply because he was in possession of her vehicle on the morning her body was found, he did not murder and rob his mother because he had her permission to use the vehicle.
 {¶ 34} With respect to the exclusion of the document from evidence, the following exchange occurred outside the presence of the jury:
 {¶ 35} "The Court: We are in recess, out of the presence of the jury for purposes of the Court to rule on a request to present a document, Defendant's Exhibit I, to the witness presently on the stand, Kathy Hill, daughter of the deceased, sister of the Defendant; and Mr. Daidone makes objection to that.
 {¶ 36} "The document purports to be a — perhaps generously a holographic will, albeit it's unsigned, unwitnessed, unnotarized; and perhaps a letter of testamentary intent, that by the deceased, Helen Todd.
 {¶ 37} "Mr. Krumholtz, your grounds for the Court's ruling its admission into evidence?
 {¶ 38} "Defense Counsel: Yes, your Honor. This is Defendant's Exhibit I, and I agree with the Court's characterization of this as an unsigned testamentary letter or letter reflecting *Page 12 
testamentary intent; and I refer the Court to Evidence Rule 803.15, Statements and Documents Effecting an Interest in Property. Quoting from the rule, `statements contained in the document purporting to establish or effect an interest in property if the matter stated was relevant to the purposes of the document unless dealings with the property since the document was made have been inconsistent with the truth of the statement or the purport of the document.'
 {¶ 39} "I would suggest to the Court that if I am able to question the current witness, Kathy Hill, to have her verify that this is, indeed, her mother's writing, because it is an unsigned document, I should then be able to present this under Evidence Rule 803.15 because at least as to the `84 Oldsmobile which has been in question in this case and, indeed, has been the subject of some of the direct examination of Kathy Hill, at least as to that document, the letter does purport to effect the ownership interest in the document, purports to convey in a testamentary fashion the car to John Dooley; and I suggest that it is relevant as it relates to the ability of John Dooley to use the `84 Oldsmobile which has been called into question in the case in general and in particular the direct examination of Kathy Hill.
 {¶ 40} "The Court: Mr. Daidone.
 {¶ 41} "The State: The State would object, your Honor. There was testimony from Kathy Hill, personal knowledge that she did not see anyone else drive the car, and her brother was not allowed to use the car between the time, I guess it was November of 2004 until the date of her mother's death in June of 2005.
 {¶ 42} "What the defense is doing is has a document — we don't even know when it was written or dated — stating what the mother's mental intent was after her death. What we're dealing with here are events that occurred prior to her death; and by trying to use a document to *Page 13 
say what the mother's state of mind was, I think we're opening up a can of worms for two reasons.
 {¶ 43} "One, again, it would be her state of mind after she died, not how she wanted use of the car before she died.
 {¶ 44} "Another is that, I believe what they're really trying to do in that is to try to paint a picture that there was a good relationship between the mother and the son and the line in there about `enjoy it, my sweet boy.'
 {¶ 45} "The State has taken great pains to avoid during the trial any state of mind, anything doing with hearsay that the deceased had towards her son. Things were not well between them, and her state of mind was that she didn't want her son around towards the end, his crack habit had been getting out of control, and that the parole officer was going to be notified. If the defense intends to get into her state of mind after her death trying to paint a sweet picture between her and her son, I think the State then should be allowed to get in which is more relevant the state of mind actually occurring at or around the time of death.
 {¶ 46} "The Court: Is that it?
 {¶ 47} "The State: Yes, your Honor.
 {¶ 48} "The Court: The Court makes a finding as follows: The document does suffer from deficiency in that the — in terms of its authenticity and its date so that it may not meet the requisite — prerequisite requirements of a document effecting an interest in property that's contemplated by the rule; but even if it does, the use — the purported use of the document, while it is a hearsay document and would be admissible under the exception, it is being used to create an inference on an inference. *Page 14 
 {¶ 49} "The inference from the document is that the Defendant would have use of the car subsequent to the deceased's death or ownership of the car, but the inference on the inference is that he had that permission for a lifetime, which the Court finds is improper. And, therefore, the Court will sustain the objection."
 {¶ 50} "`The admission or exclusion of relevant evidence rests within the sound discretion of the trial court.' State v. Sage (1987),31 Ohio St.3d 173, 180. Unless the trial court has clearly abused its discretion, and the defendant has been materially prejudiced thereby, a reviewing court should be slow to interfere. O'Brien v. Angley (1980),63 Ohio St.2d 159, 163." State v. Burgess (Nov. 8, 1996), Montgomery App. No. 15548. We review the trial court's decision regarding the admission or exclusion of evidence under an abuse of discretion standard of review. State v. Carter, Summit App. No. 22444, 2005-Ohio-4362. "An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling." Id. (Internal citations omitted.) "An abuse of discretion demonstrates `perversity of will, passion, prejudice, partiality, or moral delinquency.'" Id. We may not substitute our judgment for that of the trial court. Id..
 {¶ 51} In sustaining the State's objection to the admission of the letter purportedly written by Todd to Dooley, the trial court initially noted that the letter was neither signed, dated, nor notarized by Todd. The document herein was unsigned and therefore is not probative of the decedent's testamentary intent. Thus, the trial court did not abuse its discretion when it sustained the State's objection and excluded the letter.
 {¶ 52} Dooley's third assignment of error is overruled.
 V *Page 15 {¶ 53} Dooley's fourth assignment of error is as follows:
 {¶ 54} "THE STATE FAILED TO PROVIDE SUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT COMMITTED THE CHARGED OFFENSES, AND THE JURY'S GUILTY VERDICT AMOUNTS TO A MANIFEST MISCARRIAGE OF JUSTICE."
 {¶ 55} In his fourth assignment, Dooley contends that the State failed to adduce sufficient evidence at trial for the jury to have found him guilty beyond a reasonable doubt of aggravated murder and aggravated robbery. We disagree.
 {¶ 56} In reviewing a challenge to the sufficiency of the evidence, we must determine whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the state had proven the essential elements of the crime beyond a reasonable doubt. See State v. Jenks (1991), 61 Ohio St.3d 259, 273,574 N.E.2d 492.
 {¶ 57} A review of the record convinces us that the State's evidence, taken in its entirety, was sufficient to sustain Dooley's conviction for the charged offenses. The following facts adduced at trial support this conclusion: 1) there was no sign of forced entry into Todd's apartment, indicating that Todd knew her assailant; 2) Dooley was aware that Todd kept her money and jewelry in various locations in her living room, and this was the only room in the apartment that was ransacked; 3) Dooley had been smoking crack with his girlfriend and other friends the night before Todd was killed, and at some point, Dooley left his friends to check on his mother and was not seen by them again; 4) when Dooley was arrested, he was driving Todd's vehicle to which he did not have a key; 5) Todd's car key was in the ignition, and on the same ring was the key to Todd's apartment to which Dooley did not have a key; 6) in the weeks *Page 16 
preceding the murder, Dooley had threatened to "mash [Todd's] face" for refusing to give him money; 7) items of clothing with Todd's blood on them that were thought to belong to Dooley were recovered from the second room in Todd's apartment; and 8) when he was arrested, Todd's blood was found on the insole of one of Dooley's shoes. When viewed in a light most favorable to the prosecution, rational minds could have reached the conclusion that the State proved that Dooley was the perpetrator of the charged offenses beyond a reasonable doubt.
 {¶ 58} Dooley's fourth assignment of error is overruled.
 VI {¶ 59} Dooley's fifth and final assignment of error is as follows:
 {¶ 60} "THE TRIAL COURT FAILED TO FOLLOW THE REQUIREMENTS OF THE OHIO REVISED CODE, APPELLANT'S SENTENCE IS INCONSISTENT WITH SENTENCES OF SIMILAR OFFENDERS, A LESSER SENTENCE IS COMMENSURATE WITH AND WOULD NOT DEMEAN THE SERIOUSNESS OF THE OFFENSE AND IMPACT OF THE VICTIM AND CONSECUTIVE SENTENCES ARE NOT JUSTIFIED."
 {¶ 61} In his final assignment of error, Dooley contends that the prison term imposed by the trial court violates the purposes of murder and felony sentencing statutes and does not comply with the requirements of R.C. § 2929.11(B). Essentially, Dooley argues that the trial court was required to state its justification on the record when it sentenced him to consecutive sentences, and he asserts that the matter should be remanded for re-sentencing.
 {¶ 62} Initially, it should be noted that pursuant to the Ohio Supreme Court's holding in State v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470,2006-Ohio-856, the trial court was not required to make any findings on the record in order to support the imposition of Dooley's *Page 17 
sentence. Post Foster, trial courts have full discretion to impose any sentence within the statutory range and are no longer required to make findings or give their reasons for imposing more than the minimum sentences.
 {¶ 63} A jury found Dooley guilty of committing matricide. The evidence adduced at trial established that at some point in the early morning of Sunday, June 12, 2005, Dooley walked into his mother's apartment, bludgeoned her to death with a baseball bat and strangled her with an extension cord. Forensic evidence provided during trial demonstrated that Dooley hit his mother in the head with such force that her skull was detached from her spine. He left his mother face down in a pool of her blood while he took her vehicle and any money and jewelry he could find in her living room. Dooley then proceeded to purchase a large amount of crack and powder cocaine, as well as secure a prostitute. Clearly, the trial court had before it sufficient evidence to justify any sentence it decided to impose within the correct statutory range.
 {¶ 64} Dooley's fifth and final assignment of error is overruled.
 VII {¶ 65} All of Dooley's assignments of error being overruled, the judgment of the trial court is affirmed.
FAIN, J. and GRADY, J., concur.
[1] Also on December 9, 2005 the trial court joined Case No. 2005-CR-4164 with Case No. 2005-CR-2963, in which Dooley was charged with theft from an elderly/disabled person, in violation of R.C. §2913.02(A)(1), for allegedly stealing a diamond ring from his mother one day prior to her murder. Thus, both cases were tried together during the trial held on January 29 through January 31, 2007.
[2] Per agreement of the parties, the repeat violent offender specifications accompanying the charges for aggravated murder and aggravated robbery were tried to the bench. The trial court found sufficient proof existed to support appellant's conviction for both specifications.
[3] Dooley was ultimately found guilt of the theft offense, as well, and the court sentenced him to one year to be served consecutively to the sentences imposed in Case No. 2005-CR-4164. *Page 1