OPINION
{¶ 1} Plaintiff-appellant Donald E. Siegenthaler appeals from a summary judgment rendered in favor of defendant-appellee Johnson Welded Products, Inc., on his cause of action for personal injury as a result of a collision between the motorcycle he was driving and a pickup truck owned and operated by Jesse Spires, an employee of Johnson Welded Products. Siegenthaler contends that the trial court erred by rendering summary judgment, because there are genuine issues of material fact: (1) whether Johnson Welded Products is vicariously liable for Spires's negligence because he was acting in the course and scope of his employment at the time of the collision; and (2) whether Johnson Welded Products is directly liable as a result of its own negligence.
 {¶ 2} We conclude that the trial court properly rendered summary judgment because, when the evidence is viewed in a light most favorable to Siegenthaler, a reasonable mind can only conclude: (1) that Spires, who was driving to a friend's house for lunch during a lunch break from work, was not acting in the course and scope of his employment at the time of the collision; and (2) the collision was not proximately caused by any negligence on the part of Johnson Welded Products. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} In September, 2002, Spires was employed by Johnson Welded Products as a welder and leak tester, working second shift. His shift ran from 3:15 p.m. until 12:15 a.m., with a 35-minute lunch break from 8:25 until 9:00. Johnson Welded Products provides a lunchroom equipped with a microwave, refrigerator, and vending machines for sandwiches, snacks and drinks, but its employees often leave the premises during their lunch break. Although they are supposed to obtain permission, they do not always do so, and Spires did not do so in this instance. Siegenthaler presented evidence that the lunchroom did not have enough seats for all of the second-shift employees.
 {¶ 4} Spires was on his way to a friend's house for lunch, driving his own pickup truck, when he collided with Siegenthaler, who was riding a motorcycle, causing injury to Siegenthaler. There is no dispute that the collision was the result of Spires's negligence.
 {¶ 5} Siegenthaler brought this action against Spires, Johnson Welded Products, and Allstate Insurance Company, Siegenthaler's uninsured, underinsured motorist carrier. Siegenthaler's claims against Spires and Allstate have been settled, and are not the subject of this appeal.
 {¶ 6} Johnson Welded Products moved for summary judgment. The trial court found Johnson Welded Products' motion to be well-taken, and summary judgment was rendered in its favor. From the summary judgment rendered against him on his claim against Johnson Welded Products, Siegenthaler appeals.
 II {¶ 7} Siegenthaler's sole assignment of error is as follows:
 {¶ 8} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN GRANTING APPELLEE JOHNSON WELDED PRODUCTS, INC.'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 9} As Siegenthaler notes, there are two issues to consider. First is Siegenthaler's claim that Johnson Welded Products is vicariously liable, under the doctrine of respondeat superior, for the negligence of its employee, Spires. Second is Siegenthaler's claim that Johnson Welded Products is directly liable for its own negligence.
 A — Johnson Welded Products's Vicarious Liability {¶ 10} Under the doctrine of respondeat superior, an employer will be held liable for the negligent act of its employee if the employee was acting within the course and scope of his employment. Osborne v. Lyles (1992), 63 Ohio St.3d 326, 587
N.E.2d 825. In applying this doctrine to a situation where an employee is operating his own automobile, the Ohio Supreme Court established the following test in Boch v. New York LifeInsurance Co. (1964), 175 Ohio St. 458, 461:
 {¶ 11} "In other words, an employer is liable for the negligence of his employee in operating the employee's own automobile only where it is established by a preponderance of the evidence[:]
 {¶ 12} "(1) that the employer had expressly or impliedly authorized the employee to use his own automobile in doing the work he was employed to do [citations omitted;]
 {¶ 13} "(2) that the employee was at the time of such negligence doing work that he was employed to do [citations omitted;] and
 {¶ 14} "(3) that the employee was subject to the direction and control of the employer as to the operation of the employee's automobile while using it in doing the work he was employed to do (so that the relation between the employer and employee in thedriving of the automobile would be the relationship of principal and agent or of master and servant as distinguished from the relationship of employer and independent contractor)" [citations omitted]. (Emphasis in original.)
 {¶ 15} In our view, the evidence before the trial court, when viewed in a light most favorable to Siegenthaler, clearly establishes that none of these conjunctive tests are met in this case. The third test alone is dispositive. Even if Spires could be said to have been using his truck in doing the work he was employed to do, at the time of the collision, which we are not prepared to find from the evidence in this record, no reasonable finder of fact could find from this evidence that Spires was subject to the direction and control of Johnson Welded Products as to the operation of his truck at the time of the collision, while he was on his way to a friend's house for lunch.
 {¶ 16} Siegenthaler argues that it is not necessary that an employer actually exercise a right to control the actions of its employee, so long as the employer possesses that right, citingPickens Plummer v. Diecker Brother (1871), 21 Ohio St. 212, and Baird v. Sickler (1982), 69 Ohio St. 2d 652. But there is nothing in this record to suggest that Spires's contract of employment with Johnson Welded Products purported to give Johnson Welded Products the right to control the manner in which Spires would drive his own vehicle to or from work, and the only reasonable inference is that Johnson Welded Products had no right to control Spires's conduct in that manner. We can see no reason why Johnson Welded Products would have any desire to control the manner in which its employees drive to or from work.
 {¶ 17} Parenthetically, in Pickens Plummer v. Diecker Brother, supra, the employee had hired a carriage and team of horses to accomplish his employer's purposes, and Baird v.Sickler, supra, dealt with the issue of whether a chief surgeon can be legally accountable for the negligence of an assisting nurse-anesthetist, not directly employed by the surgeon. Neither of these cases has any significance for the issue before us.
 {¶ 18} The trial court correctly found that upon the evidence before it, when viewed in a light most favorable to Siegenthaler, reasonable minds could only conclude that Johnson Welded Products had no vicarious liability for the negligence of its employee, Spires, under the doctrine of respondeat superior.
 B — Johnson Welded Products's Direct Liability {¶ 19} Siegenthaler argues that his collision with Spires, and the resulting injuries to Siegenthaler, were proximately caused by Johnson Welded Products's own negligence. Siegenthaler asserts two theories of negligence on the part of Johnson Welded Products.
 {¶ 20} First, Siegenthaler asserts that Johnson Welded Products was negligent in allowing its employees only 35 minutes for a lunch break. Even if this conduct were deemed to be negligent — presumably a breach of Johnson Welded Products's duty to its employees, not to the public at large — this negligence cannot reasonably be deemed to have constituted a proximate cause of Siegenthaler's injury; Siegenthaler's injury was the result of Spires's negligence in operating his pickup truck, clearly an independent, intervening cause.
 {¶ 21} Siegenthaler is asking this court to adopt a rule of law that would make an employer liable any time that an employee's ability to drive his own vehicle is arguably adversely affected by working conditions within the scope of employment. Undoubtedly, working an eight-hour shift as a welder and leak-finder has a tendency to tire an individual, which will no doubt result in that individual being less alert when driving home from work. We are not prepared to say that this can serve as the basis for a cause of action against the employer for negligence, by a member of the public injured as a result of the employee's negligence in driving home from work. Neither are we prepared to say that an employer's decision to allow employees a 35-minute lunch break, with the option to leave the premises for lunch, can serve as a basis for a cause of action against the employer for negligence, by a member of the public injured as a result of the employee's negligence in driving to some destination, of the employee's choice, for lunch. The employer did not direct the employee how to drive, where to drive, or even whether to drive, since the employee has the option to eat lunch on the premises. The employer's decision to allow only 35 minutes for the lunch break, if it even could be deemed to satisfy a but-for test of causation, is too remote to be considered a proximate cause of Siegenthaler's injury.
 {¶ 22} Siegenthaler next contends that Johnson Welded Products was negligent in not inquiring concerning Spires's driving record, which was apparently bad, since Spires did once drive a forklift at his place of employment, albeit without the knowledge or permission of his employer. Siegenthaler contends that because Spires operated a powered industrial truck, Johnson Welded Products had a duty under OSHA regulations to conduct a background check of his driving record, even though it had no knowledge of the fact that Spires had driven the forklift, and had not given him permission to do so.
 {¶ 23} Assuming, for purposes of analysis, only, that Johnson Welded Products had a duty, under OSHA regulations, to conduct a background check of Spires's driving record, we see no reasonable argument that can be made that the failure to conduct the background check was a proximate cause of Siegenthaler's injuries. Johnson Welded Products never had, or claimed to have had, authority to control Spires's manner of getting to or from his place of employment. He could walk, get a ride from a friend, take a taxi, or drive himself to and from Johnson Welded Products, which would have had no interest, that we can see, in attempting to control how Spires got to and from work. Therefore, had Johnson Welded Products found out about Spires's bad driving record, it had no duty to protect the public from the possibility that Spires would have an accident while driving his own vehicle to or from work, if that is how he should choose to get to or from work. It might be different, of course, if Johnson Welded Products had been sending Spires out onto the public roads on its business, even if Spires was operating his own vehicle while conducting his employer's business, but that is not the case here.
 {¶ 24} Traffic courts, when suspending driver's licenses, frequently allow the motorist driving privileges to and from work. If a motorist with a bad enough driving record to incur a license suspension can nevertheless obtain judicial dispensation to drive to and from work, surely an employer is not required to do what a traffic court won't do, and refuse the employee permission to drive himself to and from work. It is the responsibility of the traffic laws, not of employers, to get sufficiently bad motorists off the road. A contrary rule of law would have the effect, in most instances, of depriving persons with bad driving records of employment opportunity.
 {¶ 25} Based upon the evidence in this record, when viewed in a light most favorable to Siegenthaler, we find that a reasonable mind can reach only one conclusion, and that conclusion is that Johnson Welded Products did not breach a duty of care to the general public that proximately caused injury to Siegenthaler.
 {¶ 26} Siegenthaler's sole assignment of error is overruled.
 III {¶ 27} Siegenthaler's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
 . . . . . . . . . . . . .
Brogan, and Wolff, JJ. concur.