OPINION
{¶ 1} Plaintiffs-appellants Tony Ratliff and Tony Ratliff as administrator for the Estate of Nancy K. Ratliff appeal from a judgment in favor of defendants-appellees David R. Brannum, David E. Brannum Sole Proprietorship, and Innovative Dream Homes, L.L.C.[1]
 {¶ 2} Ratliff and the Estate contend that the trial court erred in limiting the examination of various witnesses, and in prohibiting the introduction of certain evidence, such as a 911 audiotape recording and a photograph. They also contend that the verdict is against the manifest weight of the evidence and that cumulative errors deprived appellants of a fair trial. In addition, Ratliff and the Estate contend that the trial court erred in granting a directed verdict in favor of David E. on the issue of David E.'s liability under the doctrine of respondeat superior.
 {¶ 3} We conclude that the trial court did not abuse its discretion in admitting or excluding various items of evidence. The sole exception might be the exclusion of a photograph that was part of an exhibit to which the parties had previously stipulated. However, it is not clear that the photograph was actually excluded; the bench conference was not recorded, and the exhibit was not offered for admission at the end of appellants' case. Even if the trial court had abused its discretion in failing to admit the photograph, this would have been harmless error.
 {¶ 4} We further conclude that the judgment is not against the manifest weight of the evidence, because competent, credible evidence exists to support the jury verdict. Finally, we conclude that the assignments of error regarding cumulative error and *Page 3 
respondeat superior are moot. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 5} This action arises from a collision between two vehicles that occurred in December 2005. David R. Brannum drove one of the vehicles (a black pickup truck), and Tony Ratliff drove the other (a red Buick). Ratliff s mother, Nancy, was a passenger in his vehicle, and died at the scene. Ratliff also received severe injuries in the accident.
 {¶ 6} Evidence about the cause of the accident is conflicting, and some of the accounts at trial differ from statements given to police. The defense theory is that Ratliff s vehicle passed David R.'s vehicle on the left and suddenly came into the slow lane, cutting off David R.'s assured clear distance and making an accident unavoidable. The plaintiffs theory is that Ratliff was rear-ended by David R.'s vehicle.
 {¶ 7} Ratliff testified that he was traveling in the slow, or right-hand, lane on the State Route 35 bypass, and that he had stayed in that lane ever since he got onto the bypass. Ratliff indicated that his cruise control was set at 53-54 miles per hour. He had just passed the off-ramp to Lower Bellbrook Road and saw the exit sign for Route 42 down the road. Ratliff turned off his cruise control in preparation to exit, when he was suddenly struck in the rear by a truck or van. Ratliff s car shot off the road, went over a grassy area, and hit a culvert. Ratliff testified that he did not have time to apply his brakes before hitting the culvert, because everything happened so fast.
 {¶ 8} At the time of the accident, David R. was on his way home from work. David R. was employed as a crew leader for a sole proprietorship owned by his father, David E. Brannum. The sole proprietorship involved subcontracting for construction of *Page 4 
residential framing. David E. Brannum also owned another company, which was called Innovative Dream Homes. Innovative was a general contractor that built and completed houses from the ground up.
 {¶ 9} On the day of the accident, David R. had finished work at a job site (Lot 43, Kings Gate) in Beavercreek, Ohio, at around 5:50 p.m. He stopped briefly at a Target store to do some Christmas shopping, but did not buy anything. David R. then drove onto State Route 35 and headed toward his home. He followed the same route he had taken to the job site that morning. David R. entered the Route 35 bypass and sped up to 65 miles per hour. The weather was dry and his headlights were on. He was traveling in the slow lane. David R. did not have his cruise control on, was not talking on his cell phone, and was not listening to music.
 {¶ 10} David R.'s written statement from the accident scene stated that:
 {¶ 11} "I was driving eastbound on 35 bypass when the driver in front of me swerved a bit and then hit the brakes. When I saw this I hit my brakes, and when I realized they were hitting thiers [sic] harder and I pushed mine harder. The next thing I knew was, the other car was in the ditch. My brakes were antilocking and I didn't know if a collision had taken place." Ohio Traffic Crash Witness Statement, admitted as part of Plaintiffs' Exhibit 1.
 {¶ 12} David R. was also asked in his statement whether he had hit the vehicle in front of him, and his answer was: "I don't know." Id. At the time these statements were made, David R. had already gone down to the culvert to the Ratliff vehicle, and was aware of the severity of the injuries, including the fact that he could not obtain a pulse for the passenger. David R. had also looked at his truck, had seen that the front end *Page 5 
was damaged, and knew contact between the vehicles had occurred. His truck did not have any damage to the front bumper area before the collision.
 {¶ 13} At trial, David R. testified that he first saw the vehicle in front of him a few seconds before the accident. He stated that the vehicle appeared to be coming from his left, because the vehicle was swerving from left to right.
 {¶ 14} Six days after the collision, David R. and his attorney met with the Xenia police department about the accident. At the time, David R. told the police that he could not give any reason for the crash. He did not tell the police then or at any time thereafter that he had been cut off by the Ratliff vehicle. In his deposition, which was taken almost two years after the accident, David R. stated that he did not know when he had first decided that he had been cut off by Ratliff.
 {¶ 15} At trial, David R. testified that he looked off to the right for a brief second before the accident to see if any cars were coming onto the highway from the Bellbrook entrance ramp, which was located just after the off lamp. Before looking off to the right, he did not see the Ratliff vehicle in his lane or off to the left. When he looked back, the accident happened almost immediately. It was less than ten seconds, more like two or three.
 {¶ 16} There was a witness to the collision who gave a statement at the scene and testified at trial. Lonnie Shattuck, Jr. exited onto the Route 35 bypass from State Route 35, and put his cruise control on 63 miles per hour. Shattuck was behind a black vehicle that was about 70 yards ahead. At the accident scene, Shattuck provided the following written statement:
 {¶ 17} "I was following a pickup truck which was following a red sedan. All at *Page 6 
once the red sedan shot off the right side of the highway and at full speed and stopped in such a way as to conceal the headlights of the car. I called 911 and went to check. The man was moving and the dog was alive but the lady in the passenger seat did not move. Emergency help showed up and took over." Ohio Traffic Crash Witness Statement, Plaintiffs' Exhibit 1.
 {¶ 18} At trial, Shattuck testified that he had completed his written statement in haste because the patrolman was telling him to clear out so that a helicopter could land. When Shattuck arrived home that night, he wrote out a more detailed statement, which stated that:
 {¶ 19} "I was in the right lane following a pickup truck about 60 or 70 yards driving about 60 miles an hour. A small red car passed me on the left and then pulled into the right lane in front of the pickup. Next thing I observed is the red car shotting [sic] of [sic] the road on the right side and into a ditch. It seemed to disappear (reason was it hit a hill of dirt and colvert [sic] and buried the headlights).
 {¶ 20} "The pickup stopped and so did I. Another vehicle which was following me also stopped and a lady got out. The time between the red car pulling into the right lane and then shotting [sic] off the road was jus [sic] seconds.
 {¶ 21} "My first thought was it had been hit by the pickup. I heard no squealing of tires and the brake lights on the truck did not come on before the red car went off the road. * * *" Id.
 {¶ 22} After writing out this statement, Shattuck filed it in his records. He was subsequently contacted by an attorney, Jim Armstrong, and mailed a copy of the *Page 7 
statement to Armstrong.[2]
 {¶ 23} Shattuck gave essentially the same testimony at trial. He did say that he did not observe anything that would suggest the direction of the truck was somehow impeded. However, Shattuck also stated that the red car "cut in," and described the motion of the car as almost continuous from the time it pulled in front of Brannum's vehicle and then headed off the road. Shattuck estimated that five or ten seconds elapsed between the time that the car moved in the path of the truck and when it went off to the right.
 {¶ 24} The police officer who investigated the accident found no evidence of braking at the scene. He did find a single yaw mark from the right lane, swerving out into the left lane. A yaw mark is a gouge or tire mark that indicates an evasive maneuver. The yaw mark in this case indicated that someone had cut the wheel to the left, and the beginning of the mark was designated the point of impact.
 {¶ 25} Both sides presented expert testimony to support their theories about the accident. Ratliffs expert, David Uhrich, testified that the two vehicles were going straight in the slow, or right-hand lane, with the pickup offset about two feet to the left of the red car. This offset explained the post-impact motion of the red car going off the right side of the road. Uhrich rejected the possibility of an angled impact or an impact going from the right side out to the left side. Uhrich estimated the speed difference between the two vehicles as five to ten miles per hour. An average driver's perception time for an unalerted hazard would be 1.1 to 1.3 seconds, which includes perception of *Page 8 
an event, time to recognize that it is a hazard, the decision to do something, and getting one's foot to the brake pedal. At the difference in speed of the vehicles, slowing ten miles an hour, from 65 to 55 miles per hour, would take 2.3 to 2.4 seconds. Thus, according to Uhrich's testimony, David R. could have avoided the accident by reacting and applying his brakes, as it would have taken a maximum of 3.7 seconds to do so.
 {¶ 26} In contrast, David R.'s expert, Michael Tussey, concluded that as the red Buick changed lanes, it invaded David R.'s "reactionary gap" and created an environment in which David R. was unable to avoid the accident. Tussey also rejected Uhrich's theory of a straight rear collision, which would have propelled Ratliff's car straight ahead. Tussey concluded that the evidence demonstrated an offset, angular impact that caused Ratliff's car to rotate clockwise and leave the roadway.
 {¶ 27} During the trial, another issue was whether David R. was in the course of employment for David E. or Innovative at the time of the accident. The trial court directed a verdict against Ratliff and the Estate on these points after the conclusion of plaintiffs' case.
 {¶ 28} After hearing the evidence, the jury returned interrogatories, concluding that David R. did not fail to maintain assured clear distance ahead, that Ratliff did not leave sufficient space to allow David R. to bring his vehicle to a stop or avoid a collision, and that David R. was not negligent. The jury entered a verdict in favor of David R.
 {¶ 29} Ratliff and the Estate now appeal from the judgment in favor of David R., David E., and Innovative.[3] *Page 9 
 II {¶ 30} Ratliff s First Assignment of Error is as follows:
 {¶ 31} "THE TRIAL COURT ERRED IN LIMITING APPELLANTS' EXAMINATION OF LONNIE SHATTUCK, JR., PREJUDICING THE APPELLANTS AND DEPRIVING THEM OF A FAIR TRIAL."
 {¶ 32} Under this assignment of error, Ratliff contends that the trial court erred in refusing to admit testimony from Lonnie Shattuck's deposition. This testimony was allegedly inconsistent with Shattuck's trial testimony about the amount of time between Ratliff s movement into David R.'s lane and the crash. At trial, Ratliff offered Shattuck as a witness for the plaintiffs.
 {¶ 33} Shattuck testified at trial that five or ten seconds elapsed between Ratliff s movement into David R.'s lane and the time that he saw something (Ratliff s car) go off to the right. Following this testimony, Plaintiff's counsel asked Shattuck if he recalled stating a number other than five to ten seconds during his deposition. Shattuck responded that "It could have been 20." Transcript of Jury Trial, Volume I, p. 208. Shattuck also testified that he was not positive what he had previously said, because his deposition had been taken months earlier. When plaintiffs' counsel attempted to refer Shattuck to page 14 of his deposition, defense counsel objected. The objection was sustained, and the trial court instructed plaintiffs' counsel to move on to the next question.
 {¶ 34} Ratliff contends that the deposition testimony could have been admitted under one of three evidentiary rules: Evid. R. 801(D)(1), Evid. R. 612, or Evid. R. 607(A). *Page 10 
Ratliff also contends that the exclusion was prejudicial, because Shattuck's testimony was "new" and surprising information that cut in half the time that David R. had to react, which significantly harmed Ratliffs position.
 {¶ 35} "[A]dmission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Haines,112 Ohio St.3d 393, 402-403, 2006-Ohio-6711, 860 N.E.2d 91, at ¶ 50. We review evidentiary decisions for abuse of discretion, which means that the trial court must have acted arbitrarily, unreasonably or unconscionably. Decisions may be unreasonable if they lack a sound reasoning process.AAAA Enterprises, Inc. v. River Place Community Urban RedevelopmentCorp. (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597.
 {¶ 36} We find no abuse of discretion. Under Evid. R. 616(C):
 {¶ 37} "Facts contradicting a witness's testimony may be shown for the purpose of impeaching the witness's testimony. If offered for the sole purpose of impeaching a witness's testimony, extrinsic evidence of contradiction is inadmissible unless the evidence is one of the following:
 {¶ 38} "(1) Permitted by Evid. R. 608(A), 609, 613, 616(A), 616(B), or 706;
 {¶ 39} "(2) Permitted by the common law of impeachment and not in conflict with the Rules of Evidence."
 {¶ 40} The evidence in question falls under Evid. R. 613(B), which allows impeachment of a witness through extrinsic evidence of a prior inconsistent statement, if the witness is given a prior opportunity to explain or deny the statement, and, if, as is pertinent here, the subject is important to the determination of the action other than credibility of the witness. Accordingly, Shattuck's prior deposition testimony could have *Page 11 
been admitted under Evid. R. 613(B).
 {¶ 41} Assuming tor the sake of argument that the admission was pertinent to credibility, Evid. R. 607(A) generally prohibits parties from impeaching the credibility of their own witnesses absent a showing of surprise and damage. However, an exception exists for statements admitted pursuant to Evid. R. 801(D)(1)(a), 801(D)(2), or 803. State v.Foster, Greene App. No. 2004-CA-19, 2005-Ohio-439, at ¶ 90.
 {¶ 42} Evid. R. 801(D)(1)(a) provides that prior inconsistent statements are not considered hearsay and are admissible if they were made under oath, are inconsistent with the declarant's trial testimony, and were given subject to cross-examination by the party against whom the statement is being offered. Depositions are part of the adversary proceedings contemplated by this rule. Keeney v. SuperAmerica (March 5, 1998), Lawrence App. No. 97 CA 4, 1998 WL 102992, * 5, citing the Staff Note to Evid. R. 801(D)(1)(a).
 {¶ 43} Accordingly, Shattuck's prior deposition testimony could have been properly admitted either to attack his credibility, without a showing of surprise and damage, or as a prior inconsistent statement, if the facts in question were important to a determination of the facts in the case. An essential prerequisite under either theory is that Shattuck's prior testimony was inconsistent or contradicted his trial testimony. However, this was not the case.
 {¶ 44} The bench conference on this issue took place off the record, and the precise deposition statement that plaintiffs' counsel wanted to inquire about is not in the record. However, at pages 13-14 of Shattuck's deposition, the following exchanges occurred regarding the time frame between the time Ratliffs car (referred to as the "red *Page 12 
car") entered the right lane, and when the car went off the highway and crashed:
 {¶ 45} "Q. You did see it go off the highway?
 {¶ 46} "A. I did see it go off the highway. Time estimate, possibly ten seconds, very, very short time.
 {¶ 47} "Q. Somewhere in the range of ten seconds?
 {¶ 48} "A. Possibly, just very quickly.
 {¶ 49} "Q. I need to ask you something here. I read a police report by Officer Roop, are you familiar with Officer Roop?
 {¶ 50} "A. Only that he gave me a phone call.
 {¶ 51} "Q. Did you talk to him on the telephone about the accident at some point after the accident?
 {¶ 52} "A. Yeah. He give [sic] me a call and said that I was going to be subpoenaed into court.
 {¶ 53} "Q. His report, one of the things he says that you said after the red car crossed from the left lane to the right lane is that it was about ten to fifteen seconds prior to the accident occurring. Do you recall saying that?
 {¶ 54} "A. Somewhere in that area, because I'm estimating. It's very possible I said that. I don't know.
 {¶ 55} "Q. But you can't recall whether you told him ten to [sic] seconds?
 {¶ 56} "A. No I can't recall that conversation. It was the [sic] over the phone." Deposition of Lonnie Shattuck, Jr., pp. 13-14.
 {¶ 57} Immediately after this discussion, Shattuck was asked in the deposition if ten seconds was his best estimate. Shattuck responded that it was "somewhere in that *Page 13 
neighborhood," but that he could not time it. Id. Shattuck said, "itseemed immediate, but again, time had to pass." Id. (Emphasis added). When pressed again about the ten-second time frame, Shattuck stated that it could be used as a figure, but that he was "guessing." Counsel indicated that he did not want Shattuck to guess, and Shattuck replied that:
 {¶ 58} "A. Well, I can't time it. I didn't time it. I just saw him pull in front of the truck and shoot off the road. So time wise I have no way of knowing. I didn't time him.
 {¶ 59} "Q. So then you don't know whether it was ten seconds or not.
 {¶ 60} "A. I can't say for sure. I estimated when I said that. It's a guess. I didn't know for sure. I didn't time him." Id.
 {¶ 61} Shattuck's trial testimony was consistent with his deposition testimony, particularly since Shattuck stressed that he was guessing about the time. Moreover, Shattuck stated at trial that he may have mentioned a figure of twenty seconds during his deposition — which is actually longer by five seconds than anything said during the deposition. Accordingly, the trial court did not abuse its discretion in refusing to allow admission of Shattuck's deposition testimony.
 {¶ 62} Ratliff's First Assignment of Error is overruled.
 III {¶ 63} Ratliff's Second Assignment of Error is as follows:
 {¶ 64} "THE TRIAL COURT ERRED IN ORDERING APPELLANT TO PROVIDE SPECULATIVE TESTIMONY, AND PERMITTING DEFENSE COUNSEL TO OFFER TESTIMONY AT TRIAL, PREJUDICING THE APPELLANTS AND DEPRIVING THEM *Page 14 
OF A FAIR TRIAL."
 {¶ 65} Under this assignment of error, Ratliff contends that the trial court erred in allowing the defense to question Ratliff about whether he had sufficient time to react to the collision. During cross examination, Ratliff estimated that at least three seconds elapsed between the time that he was hit by the pickup truck and when he hit the culvert. Ratliff also stated that he did not apply his brakes because he did not have time to react. Defense counsel then asked the following question: "So you would agree that it takes more than three seconds to react to operate a motor vehicle?" Transcript of Jury Trial, Volume II, p. 318.
 {¶ 66} Ratliff s counsel objected, but the trial court allowed the question to stand. Ratliff then responded that "it would be an estimate to say that. I mean — it's like — I'm no expert when it comes to vehicles." Id. at 319.
 {¶ 67} Ratliff contends that admission of this evidence was prejudicial, because reaction time was a major issue in the trial. According to Ratliff, the fact that he could not react within three seconds unfairly implied that David R. could also not be expected to react in only 1.6 seconds.
 {¶ 68} As an initial matter, we note that Ratliff has incorrectly characterized the testimony. Ratliff's expert testified that 50 to 85% of people can react in 1.1 to 1.3 seconds to events to which they are unalerted; i.e., events which they have not had any reason to anticipate. Both the plaintiff and defense experts indicated that 95% of people will react to an event of this kind in 1.6 seconds. Consequently, on this point, there was no real dispute.
 {¶ 69} The plaintiffs' expert also indicated that David R. should have been able to *Page 15 
reduce his speed by ten miles per hour and avoid the collision by reacting and applying his brakes — all of which could have occurred in as little as 3.7 seconds from the time that David R. became aware of the Ratliff automobile entering his path of travel. Thus, under his own expert's testimony, Ratliff should also have had time to perceive the event and apply his brakes. However, he did not do that, and the jury was entitled to take that fact into consideration when assessing the respective negligence of the parties. Ratliff s answer made it clear that he was not an expert, and it was not unfair to question him about his contention that he did not have time to apply his brakes.
 {¶ 70} Ratliff s Second Assignment of Error is overruled.
 IV {¶ 71} Ratliff s Third Assignment of Error is as follows:
 {¶ 72} "THE TRIAL COURT ERRED IN PROHIBITING CROSS-EXAMINATION OF MICHAEL TUSSEY REGARDING THE CONCLUSIONS REACHED BY THE XENIA POLICE, PREJUDICING THE APPELLANTS AND DEPRIVING THEM OF A FAIR TRIAL."
 {¶ 73} Ratliff contends under this assignment of error that the trial court should have permitted cross-examination of defense expert, Michael Tussey, concerning the conclusions of the Xenia Police department. According to Ratliff, the police's crash report concluded that David R. failed to maintain assured clear distance ahead and struck the rear of Ratliff s vehicle. Ratliff also claims that the police found the accident to be a "center-to-center" rear-end collision, rather than an offset, angular collision.
 {¶ 74} In arguing that the court erred, Ratliff agrees that the officers' conclusions *Page 16 
would normally be inadmissible as hearsay. Ratliff argues, however, that he should have been able to ask Tussey about these matters, because Tussey admitted during his testimony that the conclusions in the police report were factually based and were not disputable. Ratliff contends that the admission of the police conclusions would have cast doubt on Tussey's testimony, since Tussey stated that the accident was an offset, angular collision, not a center-to-center impact. The police conclusions also conflicted with Tussey's assertion that Ratliff s vehicle violated the reactionary gap of David R.'s vehicle and prevented David R. from being able to avoid the accident. Ratliff contends that the conclusions in the police report are admissible either as a specific contradiction of facts under Evid. R. 616(C) or as permissible impeachment under Evid. R. 703 and 705.
 {¶ 75} We cannot predicate error upon the failure to admit this evidence, because Ratliff failed to request its admission at trial and the evidence is not properly before us. It is well-settled that "`[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.'" Williams v. Premier Auto Mall, Montgomery App. No. 19690, 2003-Ohio-5922, at ¶ 2, quoting from State v.Ishmail (1978), 54 Ohio St.2d 402, 377 N.E.2d 500, paragraph one of the syllabus.
 {¶ 76} After the accident, the Xenia Police Department prepared Ohio Traffic Accident Report, OH-2, Xenia local report number 2005X5354, parts of which were designated as Plaintiffs' Exhibit 1 at trial. The only parts of the OH-2 that were mentioned during Ratliff s case were two pages of Detective Meadows' report, five traffic accident diagram pages prepared by Officer Kelley, the witness statements for David R. *Page 17 
and Lonnie Shattuck, and some notes of Officer Roop, which were briefly referenced, but were never identified or discussed.
 {¶ 77} At the close of his case, Ratliff asked to admit only the five traffic accident diagram pages, which consisted of various measurements of the vehicles and the scene, and a drawing showing the point of impact and final resting place of the vehicles. The only other parts of Exhibit 1 that were offered were the witness statements, which were also admitted.
 {¶ 78} In an appendix to his brief, Ratliff has included various pages of the police report that were not admitted at trial. These pages are: Appx. 19, 20, 21, 27, 28, 29, and 30. One of these pages contains the observations in question — that David R.'s truck "failed to maintain assured clear distance ahead and struck the rear" of Ratliff s vehicle. See Appx. 21, attached to the Ratliff Brief. The same page of the police report also contains a drawing showing both vehicles in the same lane of travel and David R's truck rear-ending the Ratliff car.
 {¶ 79} After this appeal was taken, the trial court filed an entry and order granting "Plaintiffs Rule 9(B)(7) Motion to Include Exhibits not Admitted at Trial." The trial court ordered the clerk to include all the exhibits that were offered into evidence but were not admitted at trial, including a 911 audio tape (Plaintiffs' Exhibit 3), the Xenia Police Department's police report, regarding the investigation and conclusions (Plaintiffs' Exhibit 1), and a photo taken by the police department of the Ratliff auto, which was used during the testimony of plaintiffs' expert, Dr. Uhrich (Plaintiffs' Exhibit 2).
 {¶ 80} The problem, however, is that the plaintiffs did not offer these exhibits into evidence, their admission was not refused by the trial court, and, most importantly of all, *Page 18 
the trial court did not have the police report before it when it considered the objection to this line of cross-examination. App. R. 9(B)(7) provides that:
 {¶ 81} "A transcript prepared by a reporter under this rule shall be in the following form:
 {¶ 82} "* * *
 {¶ 83} "(7) Exhibits such as papers, maps, photographs, and similar items that were admitted shall be firmly attached, either directly or in an envelope to the inside rear cover, except as to exhibits whose size or bulk makes attachment impractical; documentary exhibits offered at trial whose admission was denied shall be included in a separate envelope with a notation that they were not admitted and also attached to the inside rear cover unless attachment is impractical * * *."
 {¶ 84} Plaintiffs did not offer any part of Plaintiffs' Exhibit 1 when it was used during testimony, nor did they offer the omitted parts of Plaintiffs' Exhibit 1 into evidence at the end of their case. Consequently, the trial court was not asked for, and did not deny, admission of the exhibits. See Transcript of Jury Trial, Volume II, p. 365, which indicates that only a few pages of Plaintiffs' Exhibit 1 were offered and admitted. Exhibit 3 was also withdrawn at this time.
 {¶ 85} Accordingly, App. R. 9(B)(7) has no application, because the exhibits were not before the trial court, and could not have been part of the trial court's consideration when it limited the plaintiffs' cross-examination of Tussey. However, even if this evidence were properly before us, we would reject Ratliffs argument. Under controlling authority, police officers may not give opinions on causation if they are not qualified as reconstruction experts. Scott v. Yates,71 Ohio St.3d 219, 221, 1994-Ohio-462, *Page 19 643 N.E.2d 105. Ratliff made no attempt at trial to qualify any of the police officers as reconstruction experts. Having failed to do that, or to directly present the evidence, Ratliff is precluded from presenting the evidence indirectly though the testimony of others.
 {¶ 86} The Ohio Supreme Court has also said that officers may testify about their collection of data and observations at the accident scene. Id. Accord, Kish v. Withers (1997), 123 Ohio App.3d 132, 137,703 N.E.2d 825. Consistent with this rule, the trial court allowed the police officers to testify about their investigation and observations.
 {¶ 87} As a final note, a police officer's "conclusions" about the cause of an accident are not "facts" for purposes of impeaching a witness under Evid. R. 616(C), nor would they be "facts" upon which an expert could properly base his opinion under Evid. R. 703. In Bedard v.Gardner, Montgomery App. No. 20430, 2005-Ohio-4196, we stressed that:
 {¶ 88} "Evid. R. 703 contemplates two sources of facts or data on which an expert witness may base an opinion. When an expert has personal knowledge of the facts or data underlying his opinion, the personal knowledge is a permissible predicate for his or her testimony. * * * When the expert lacks personal knowledge of the operative facts or data of the case, the only permissible source from which those foundational matters may be derived is the body of facts or data already `admitted in evidence at the hearing.'" Id. at ¶ 99.
 {¶ 89} In Azzano v. O'Malley-Clements (1998), 126 Ohio App.3d 368,374, 710 N.E.2d 373, the Eighth District Court of Appeals also noted that under Evid. R. 703, "expert opinions may not be based upon other opinions and may not be based upon *Page 20 
hearsay evidence which has not been admitted." The conclusions of the Xenia police officers about the cause of the accident were merely the opinions of a particular officer, and not data or facts.
 {¶ 90} Ratliffs Third Assignment of Error is overruled.
 V {¶ 91} Ratliffs Fourth Assignment of Error is as follows:
 {¶ 92} "THE TRIAL COURT ERRED IN LIMITING APPELLANTS' EXAMINATION OF DETECTIVE MEADOWS AND OFFICER ROOP, PREJUDICING THE APPELLANTS AND DEPRIVING THEM OF A FAIR TRIAL."
 {¶ 93} Under this assignment of error, Ratliff contends that the trial court erred in restricting the examination of Detective Meadows and Officer Roop, and in sustaining various objections during their testimony. In particular, Ratliff focuses on his inability to elicit details of what David E. said to Meadows at the scene, or details about David R's conversation with Roop several days after the accident. Ratliff argues that the court's rulings were prejudicial because David E. had no role at the accident scene other than as David R.'s employer, and the jury should have been allowed to hear what David E., as an employer, instructed his son to do. Ratliff also claims that David R.'s failure to tell Roop about being cut off would have cast doubt on David R.'s credibility.
 {¶ 94} As was noted, "admission or exclusion of relevant evidence rests within the sound discretion of the trial court." Haines,2006-Ohio-6711, at ¶ 50. After reviewing the entire record, we find no abuse of discretion.
 {¶ 95} As a preliminary point, we note that when the objections were sustained, Ratliffs counsel failed to proffer the content of the anticipated testimony. *Page 21 
Evid. R. 103(A) provides that:
 {¶ 96} "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
 {¶ 97} "* * *
 {¶ 98} "(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. * * *"
 {¶ 99} The purpose of this rule is to provide reviewing courts with a basis for determining if an alleged error is prejudicial. State v.Gilmore (1986), 28 Ohio St.3d 190, 191-92, 503 N.E.2d 147.
 {¶ 100} Ratliff called both Meadows and Roop as witnesses during the plaintiffs' case. Meadows interviewed David R. at the scene, and testified about a series of questions that David R. answered. While discussing these questions, Meadows began to relate something that David R.'s father, David E., had said, and the trial court sustained an objection. When the objection was sustained, plaintiffs' counsel did not proffer what the officer's testimony on this point would have been. The substance of the evidence is also not apparent from the context of the question. Consequently, there is nothing in the record to indicate that the anticipated testimony had anything to do with David R.'s employment.
 {¶ 101} In his brief, Rafliff refers to Appx. 27 and 28, and contends that he proffered Meadows's report after trial. We have already indicated that these portions of the Appendix were never offered into evidence at trial, and cannot be considered. However, even if we could consider the material, there is nothing in Appx. 27 or 28 that *Page 22 
relates to David E., other than the mere fact that he was at the scene. Since David R. called his father immediately after the accident, his father's presence at the scene is not surprising.
 {¶ 102} Ratliff was able to elicit testimony from Meadows indicating that Meadows wished to ask further questions of David R., but was prevented from doing so. The inference from this testimony is that David R.'s father prevented him from speaking further with the police. Again, there is no indication that this had anything to do with employment; it is more likely that David E. was acting in a parental role to protect his son, given the severity of the accident.
 {¶ 103} The second major area of contention is Ratliff s inability to elicit testimony about David R.'s failure to tell Officer Roop that he had been cut off by the Ratliff car. Roop indicated that he had spoken with David R. several days after the accident. During Roop's testimony, the following exchange occurred:
 {¶ 104} "Q If you can recall, can you share with the jury what Mr. Brannum said to you on November 14, 2005?
 {¶ 105} "A He stated he did not — he did not remember striking the car in front of him and he stated that he got potentially close enough to strike it, but he did not remember striking the vehicle.
 {¶ 106} "I asked him about what he had done that day, what time he got up, how long he worked or what he had done after he got off work, and I asked him about the damage, the corresponding damage between his vehicle and the Ratliff vehicle, and asked him for any explanation and he could not give me one.
 {¶ 107} "I asked him about any distractions in the vehicle. He stated he was *Page 23 
not talking on the phone at the time nor was he listening to a radio and he did not have his cruise control on.
 {¶ 108} "Q Was he able to give you a reason for the crash?
 {¶ 109} "Mr Ames: Object, he just said that.
 {¶ 110} "The Court: Asked and answered. Sustained.
 {¶ 111} "By Mr. Boddie:
 {¶ 112} "Q That's the extent of your recollection?
 {¶ 113} "A Correct.
 {¶ 114} "Mr. Boddie: No further questions." Transcript of Jury Trial, Volume II, pp. 372-73.
 {¶ 115} The trial court did not err in sustaining the objection, as the question does appear repetitive, in view of Officer Roop's previous testimony that David R. could not give him an explanation for the accident. Furthermore, Ratliff again failed to proffer the anticipated testimony. Even if we assume that trial counsel intended to elicit a statement that David R. did not claim to have been cut off by the Ratliff vehicle, counsel had already accomplished essentially the same goal. Specifically, Officer Roop indicated that David R. was not able to give any explanation for the crash. Accordingly, the trial court did not err in sustaining the objection.
 {¶ 116} We also note David R.'s own testimony, which occurred before the testimony of Officer Roop. David R. testified that he never told the police that he had been cut off by the Ratliff vehicle, and could not recall when he first came up with this theory. Consequently, Officer Roop's testimony in this regard would not have added anything to what David R. had already admitted. *Page 24 
 {¶ 117} Ratl iff's Fourth Assignment of Error is overruled.
 VI {¶ 118} Ratliff s Fifth Assignment of Error is as follows:
 {¶ 119} "THE TRIAL COURT ERRED IN EXCLUDING THE 911
AUDIOTAPE RECORDING, PREJUDICING THE APPELLANTS AND DEPRIVING THEM OF A FAIR TRIAL."
 {¶ 120} Under this assignment of error, Ratliff contends that the trial court erred in excluding the audiotape recording of Shattuck's 911 call reporting the accident. The audiotape recording was labeled as Plaintiffs' Exhibit 3.
 {¶ 121} On the morning of trial, defendants filed a motion in limine, asking for the exclusion of Plaintiffs' Exhibit 3, as well as other evidence. The parties agree that a hearing was held, although they dispute exactly when the hearing occurred. The parties also agree that the trial court ruled that the tape could not be played. Unfortunately, the trial transcript does not contain a record of the hearing or the court's decision, nor do the exhibits include a copy of the 911 tape.
 {¶ 122} As was noted earlier, the trial court filed an entry after the case was on appeal, and ordered Plaintiffs' Exhibit 3 to be included with the trial transcript. Again, however, plaintiffs did not offer this exhibit into evidence at trial. In fact, the plaintiffs withdrew Plaintiffs' Exhibit 3, along with some other exhibits, at the end of their case.
 {¶ 123} Ratliff argues that he did not intend to waive the issue of the 911 tape, and contends that he was entitled to make a written proffer of the evidence, pursuant to our decision in *Page 25 
 {¶ 124} Mangan v. Mangan, Greene App. No. 07-CA-100, 2008-Ohio-3622. We did indicate in Mangan that courts have allowed written proffers of excluded testimony of witnesses. Id. at ¶ 11. However, Ratliff clearly withdrew the tape from evidence at trial, and the most that can be said is that he may have later changed his mind, two months after the case had been appealed. At that point, Ratliff filed a motion to include various exhibits with the trial transcript. We have difficulty concluding that the motion was a written proffer, particularly since it reveals nothing about what the tape said and why its admission would have been relevant.
 {¶ 125} In this regard, counsel for Ratliff has included an affidavit in the Appendix to his brief. The affidavit indicates that counsel asked the trial court to note his exception to the 911 audiotape ruling. Counsel also points out that the trial court stated that counsel's objection would be noted. The affidavit further indicates that Ratliff s counsel was unaware that the hearing, ruling, and request for an exception were not transcribed, until after he received a copy of the trial transcript.
 {¶ 126} App. R. 9(E) provides for procedures to be followed to correct or modify the record if anything material is omitted from the record by accident. The record may be corrected by stipulation of the parties, by the trial court, or by the court of appeals on proper suggestion or on its own initiative. Although Ratliff appears to have waived this matter by withdrawing the 911 audiotape, the parties agree as to the relevant content of the tape. Consequently, we will consider the record corrected on proper suggestion and by agreement of the parties as to the content of the tape, not as to its admissibility. We will, therefore, consider whether the trial court erred in refusing to admit the audiotape. Again, the trial court's decision is reviewed for abuse of *Page 26 
discretion.
 {¶ 127} According to the parties, Shattuck states in the relevant parts of the 911 tape as follows:
 {¶ 128} "* * * a car just shot off the ditch, it is down in the ditch, there is no lights and we don't know what's going on and we need help.
 {¶ 129} "* * *
 {¶ 130} "* * * it just shot off into the field, I don't know what's going on.
 {¶ 131} "* * * a man is trying to turn his truck * * *
 {¶ 132} "* * * it's a red automobile, he got [sic] headlights on it now. It's a red automobile."
 {¶ 133} We have held that 911 calls are admissible under the excited utterance exception to the hearsay rule. State v. Williams, Montgomery App. No. 20368, 2005-Ohio-213, at ¶ 17. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid. R. Rule 803(2). In order for a statement to be admissible as an excited utterance:
 {¶ 134} "(1) there must have been an event startling enough to produce a nervous excitement in the declarant; (2) the statement must have been made while under the stress of excitement caused by the event; (3) the statement must have related to the startling event; and (4) the declarant must have personally observed the startling event." State v.Helney, Montgomery App. No. 20789, 2005-Ohio-6142, at ¶ 23.
 {¶ 135} Ratliff did not lay a specific foundation for admission of the 911 audiotape, probably because of the liminal ruling. The proper approach would have *Page 27 
been to lay a foundation during trial and then proffer the evidence. Nonetheless, in view of rulings in other cases, it is likely that the audiotape would have been admissible as an excited utterance. See, e.g.,Gardner v. Drozdowicz, Lucas App. No. L-04-1084, 2004-Ohio-6310, at ¶ 18-19 (statements at the scene by passenger involved in auto collision were admissible as excited utterances); and State v. Marbury, Montgomery App. No. 19226, 2004-Ohio-1817, at ¶ 37 (911 call of witness who saw shooting was admissible as an excited utterance). Accordingly, the trial court should have held the 911 audiotape admissible.
 {¶ 136} However, even if the trial court abused its discretion in failing to admit the evidence, the error must have caused material prejudice in order to constitute the basis for reversal of a judgment.State v. Dooley, Montgomery App. No. 22100, 2008-Ohio-1748, at ¶ 50. No prejudice occurred in the present case, because the content of the 911 call does not establish any facts different from what was already established by the evidence. Ratliff points out that Shattuck's statement at the scene did not refer to a red automobile passing David R.'s truck on the left, and that Shattuck's second statement does contain such a reference. Ratliff, contends that the 911 call "arguably" provides further evidence that Shattuck's second statement was not credible. We disagree. The content of the 911 call is consistent with both statements and does not contradict the second statement. Instead, the call simply indicates that the car shot off into the ditch (which was true), and that the car was red (again true). Nothing material would have been gained from admitting the content of the call, which was merely cumulative of other testimony.
 {¶ 137} Accordingly, Ratliff s Fifth Assignment of Error is overruled. *Page 28 
 VII {¶ 138} Ratliff s Sixth Assignment of Error is as follows:
 {¶ 139} "THE TRIAL COURT ERRED IN LIMITING APPELLANTS' USE OF ALL OF THE PHOTOGRAPHS IN EXHIBIT 2, PREJUDICING THE APPELLANTS AND DEPRIVING THEM OF A FAIR TRIAL."
 {¶ 140} Under this assignment of error, Ratliff contends that the trial court erred in excluding a photograph of Ratliff s car that was referred to during Dr. Uhrich's testimony. The photograph was allegedly part of a group of photos that had been labeled as Exhibit 2. We say "allegedly," because the photograph referenced in Ratliff s brief was submitted as part of the appendix to the brief (Appx. 34), and is not one of the photographs that was included as part of Exhibit 2 when the trial court record was transmitted.
 {¶ 141} Ratliff points out that the defense had stipulated to the admission of Exhibit 2 prior to trial, but then objected when this particular photograph (Appx. 34) was used. When the objection occurred, Uhrich had just commented that the photo showed the left rear bumper of Ratliff s car. Uhrich pointed out lines that showed no distortion, and stated that this meant that there was no impact from the right side going out to the left. After defense counsel objected, the trial court noted that despite the stipulation, things were a little "problematic." This was because the photos were originally in electronic form, and plaintiffs had not separately labeled each printed photo within Exhibit 2. A bench conference occurred, which again was not recorded. No ruling was issued on the record, and there is no indication what was done with the photograph. *Page 29 
Instead, testimony simply resumed. Transcript of Jury Trial, Volume II, pp. 385-87.
 {¶ 142} Photos were admitted as a group (Exhibit 2) at the end of plaintiffs case, and eight photos were transmitted as part of the exhibits. Transcript of Jury Trial, Volume III, p. 565. The photo in Appx. 34 was not discussed at the time the photos were admitted, and, as was noted, this photo was not included as part of Exhibit 2.
 {¶ 143} It is difficult, if not impossible, to evaluate evidence that was not formally discussed during the admission of exhibits, and on which a clear ruling was never issued. Furthermore, Ratliff does not suggest in his brief why the failure to admit Appx. 34 specifically and materially prejudiced his case. In view of these facts, Ratliff s Sixth Assignment of Error is overruled.
 VIII {¶ 144} Ratliff s Seventh Assignment of Error is as follows:
 {¶ 145} "THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 146} Ratliff contends under this assignment of error that the verdict is not supported by competent, credible evidence. In support of this contention, Ratliff argues that Shattuck's trial testimony is legally insufficient to establish that the Ratliff vehicle suddenly appeared in David R.'s path. Ratliff also contends that David R. should have been able to avoid the collision because he had five to ten seconds to react, which was within the scientific estimate of the time needed to react and slow down from 65 to 55 miles per hour. Finally, Ratliff points out that the jury found Ratliff 100% at fault, even though the defense expert testified that Ratliff s operation of his vehicle in front of David *Page 30 
R.'s vehicle was not the cause of the collision.
 {¶ 147} In State v. Wilson, 113 Ohio St.3d 382, 387, 2007-Ohio-2202,865 N.E.2d 1264, the Ohio Supreme Court clarified the civil manifest-weight-of-the-evidence standard, by observing that:
 {¶ 148} "[T]he civil manifest-weight-of-the-evidence standard was explained in C.E. Morris Co. v. Foley Constr. Co., 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus (`Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence'). We have also recognized when reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. * * * This presumption arises because the trial judge [or finder-of-fact] had an opportunity `to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' * * * `A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.'" Id. at ¶ 24 (bracketed material added; citations omitted).
 {¶ 149} After reviewing the record, we conclude that the judgment is supported by competent, credible evidence. Shattuck definitively testified that Ratliff's car passed him in the left lane. Shattuck also stated that Ratliff's car cut into the lane in front of David R.'s truck, and then shot out to the right within seconds. Shattuck did not *Page 31 
observe the application of either a turn signal or brake lights before Ratliffs car pulled in front of the truck. Shattuck described the motion of the red car as almost continuous, as it pulled in front of the truck and headed off the road. Ratliff testified that his speed was originally around 53-54 miles per hour and that he had deactivated his cruise control just before he was hit.
 {¶ 150} According to undisputed testimony, David R.'s truck was traveling at about 65 miles per hour just before the collision. The defense expert, Tussey, testified that at that speed, the truck would have traveled about 150 feet within the 1.6 seconds of reactionary time. When Ratliffs vehicle changed lanes, it came directly in front of David R.'s truck, and invaded the reactionary gap time that David R. needed to react. No brake lights came on, because Ratliff achieved deceleration by disengaging his cruise control, rather than by braking; therefore, David R. was not alerted to the fact that he needed to take action to avoid colliding with Ratliffs car. Tussey, therefore, testified that David R. did not have time to avoid the accident by swerving or braking or any other act. Contrary to Ratliffs claim, Tussey did not reject Ratliffs vehicle as a cause of the collision. Tussey stated during cross-examination that Ratliffs vehicle created an environment where it was a contributing factor.
 {¶ 151} Ratliff did testify that he was in the right-hand lane from the time that he entered the highway, and never changed lanes, when he was suddenly struck from the rear. However, this testimony is completely inconsistent with Shattuck's testimony. In finding Ratliff solely liable for the accident, the jury presumably credited the testimony of Shattuck and Tussey. Since credibility determinations are within the jury's province, we must accord deference to the jury's verdict. *Page 32 
 {¶ 152} Ratliff s Seventh Assignment of Error is overruled.
 IX {¶ 153} Ratliff s Eighth Assignment of Error is as follows:
 {¶ 154} "THE CUMULATIVE EFFECT OF THE ERRORS OCCURRING AT TRIAL DEPRIVED THE APPELLANTS OF A FAIR TRIAL."
 {¶ 155} Under this assignment of error, Ratliff contends that the cumulative effect of the above errors deprived him of a fair trial. Ohio courts do not universally employ the cumulative error doctrine in a civil context. Sykes v. General Motors Corp., Trumbull App. No. 2003-T-0007, 2003-Ohio-7217, at ¶ 39. There is a difference of opinion on this point, however. Compare, Katz v. Enzer (1985),29 Ohio App.3d 118, 124, 504 N.E.2d 427 (First District Court of Appeals applies cumulative error doctrine and reverses judgment); and Nicholas v. YellowCab Co. (1962), 116 Ohio App. 402, 412, 180 N.E.2d 279) (Eighth District Court of Appeals rejects the doctrine, holding that any error must stand on its own merits and is not aided by cumulative effects of other error). But, see, Dawson v. Cleveland Metropolitan General Hosp. (Nov. 20, 1986), Cuyahoga App. Nos. 51052, 51779, 1986 WL 13323, * 10 (Eighth District Court of Appeals holds that the extension of the cumulative error doctrine to civil cases is warranted where the court is confronted with several errors, which either are harmless individually or have marginal prejudicial effects, but combine to require a new trial).
 {¶ 156} Our own district has taken inconsistent positions on this point. Compare James v. Franks (1968),15 Ohio App.2d 215, 220,240 N.E.2d 508, 511 (specifically examining the record and evaluating cumulative effect of assigned errors to *Page 33 
determine if prejudice occurred); Brewer v. Sky Climber, Inc. (June 14, 1984), Montgomery App. No. 8071, 1984 WL 5329, * 8 (holding that any error "`must stand or fall on its own merits and is not aided by cumulative effect of other error'"); Akers v. Levitt (Jan. 27, 1992), Montgomery App. No. 12471, 1992 WL 10288, * 3 (applying cumulative error analysis, but finding that plaintiff-appellant received a fair trial);Walton v. Able Drywall Co., Montgomery App. No. 18531, 2001-Ohio-1838,2001 WL 1460928, * 4 (addressing argument regarding cumulative errors by considering each error separately, for purposes of guiding trial court on remand, because the case was being reversed on other error); andCummins v. Kettering Med. Ctr, Montgomery App. No. 22170,2008-Ohio-2591, at ¶ 62 (holding that the cumulative error doctrine is not traditionally used in the civil context and declining to engage in the analysis due to existence of other prejudicial error).
 {¶ 157} While it might be desirable to resolve these inconsistencies at some point, we need not consider the matter further in the context of the present case, because we have found but a single error, which we have deemed to have been harmless. Therefore, there are no multiple errors to cumulate for purposes of evaluating prejudice.
 {¶ 158} Ratl iff s Eighth Assignment of Error is overruled.
 X {¶ 159} Ratliff s Ninth Assignment of Error is as follows:
 {¶ 160} "THE TRIAL COURT ERRED IN DISMISSING DEFENDANT DAVID E. BRANNUM SOLE PROPRIETORSHIP FROM THE ACTION." *Page 34 
 {¶ 161} The claims against David E. were based on the doctrine of respondeat superior, which provides that "`an employer will be held liable for the negligent act of its employee if the employee was acting within the course and scope of his employment.'" Siegenthaler v. JohnsonWelded Prods., Inc., Clark App. No. 2006-CA-16, 2006-Ohio-5588, at ¶ 10 (citation omitted). Where an employee is using his or her own automobile, the plaintiff must establish by a preponderance of the evidence:
 {¶ 162} "(1) that the employer had expressly or impliedly authorized the employee to use his own automobile in doing the work he was employed to do,
 {¶ 163} "(2) that the employee was at the time of such negligence doing work that he was employed to do, and
 {¶ 164} "(3) that the employee was subject to the direction and control of the employer in the operation of the employee's automobile while using it in doing the work he was employed to do." Boch v. NewYork Life Ins. Co. (1964), 175 Ohio St. 458, 458-59, 196 N.E.2d 90, paragraph one of the syllabus.
 {¶ 165} This issue is generally decided by the jury, but becomes a matter of law if the facts are undisputed and conflicting inferences do not exist. Osborne v. Lyles (1992), 63 Ohio St.3d 326, 330,587 N.E.2d 825. After hearing the testimony in the present case, the trial court found that David R.'s employment was at a fixed situs. The trial court further concluded that David E. did not assert control over David R.'s vehicle and did not receive any benefit at the time of the accident. The trial court also found that David R.'s trip to Target broke any causal connection between David R.'s employment and the accident. Accordingly, the trial court granted a directed verdict in *Page 35 
favor of David E. and Innovative on this issue. The court additionally concluded that the issue of an alter ego relationship between David E. and Innovative was moot.
 {¶ 166} Ratliff contends the trial judge improperly usurped the jury's function and improperly granted the directed verdict in favor of David E. Ratliff does not challenge the dismissal of the claims against Innovative.
 {¶ 167} We apply de novo review to the grant or denial of directed verdicts. In conducting this review, we construe the evidence most strongly in favor of the nonmoving party. A motion for directed verdict must be denied "where there is substantial evidence upon which reasonable minds could reach different conclusions on the essential elements of the claim." Anousheh v. Planet Ford, Inc., Montgomery App. Nos. 21960, 21967, 2007-Ohio-4543, at ¶ 43 (citations omitted).
 {¶ 168} Because the jury concluded that David R. was not liable for the injuries sustained in the automobile accident, and the resulting judgment in favor of David R. is being affirmed, David E. could not be held liable on the basis of respondeat superior.
 {¶ 169} Ratliff s Ninth Assignment of Error is, therefore, overruled as moot.
 XI {¶ 170} David E. presents an assignment of error "in Support of Affirmance," as follows:
 {¶ 171} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR A DIRECTED VERDICT ON BEHALF OF DAVID BRANNUM."
 {¶ 172} Under this assignment of error, which is presented under *Page 36 
R.C. 2505.22, David E. contends that the trial court should have granted a directed verdict after opening statements, because Ratliff failed to allege or claim any operative facts pertinent to the alter ego claim. In view of our disposition of the plaintiffs' assignments of error, this issue is moot.
 XII {¶ 173} All of Ratliff s and the Estate's assignments of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and DONOVAN, J., concur.
Copies mailed to:
Kelvin L. Boddie
Walter Reynolds
Michael W. Sandner
Arthur A. Ames
Hon. Stephen Wolaver
[1] The parties will be referred to herein as Tony Ratliff, the Estate, David R., David E., and Innovative.
[2] The law firm of Ames and Armstrong was trial counsel for David E1Brannum, Sole Proprietorship. Arthur Ames of that firm is the attorney who accompanied David R. to the Xenia Police Department six days after the collision.
[3] Although there are two plaintiffs, the Estate and Ratliff, we will refer collectively to the plaintiffs as "Ratliff" during our discussion of the assignments of error. *Page 1